UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| STEWART MCINTOSH,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 16-cv-0963-JAH-BGS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
|---|---|

## INTRODUCTION

Stewart McIntosh ("Plaintiff"), filed this action seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Defendant") denying Plaintiff's claim for Supplemental Security Income disability benefits pursuant to 42 U.S.C. 405(g). On appeal, Plaintiff's raises the sole issue of whether the ALJ properly incorporated the opinions of psychologist Dr. Ted Shore into Plaintiff's Residual Functional Capacity ("RFC"). Plaintiff contends it was reversible error not to incorporate limitations proffered by Dr. Shore into the hypothetical given to the vocational expert.

After a thorough review of the parties' submissions, along with the entire record submitted in this matter, and for the reasons set forth below, this Court **DENIES** Plaintiff's

motion for reversal or remand of the Commissioner's administrative decision, and **GRANTS** Defendant's Cross-Motion for Summary Judgment.

# BACKGROUND

## I. Procedural Background

On April 9, 2012 Plaintiff filed an application for Supplemental Security Income (SSI) alleging disability beginning on September 30, 2005.[1] See AR[2] at 20. Plaintiff's claim was initially denied on July 9, 2012, and subsequently denied again on reconsideration. Id. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on April 25, 2014. Id. On June 13, 2014, the ALJ issued a decision finding Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. See AR 17–36. Plaintiff's request for Appeal Council review was denied, and Plaintiff commenced the present action pursuant to 42 U.S.C. § 405(g).

Plaintiff filed the instant complaint on April 21, 2016. [Doc. No. 1]. Defendant filed an answer on July 12, 2016. [Doc. No. 11]. Thereafter, Plaintiff filed a Motion for Summary Judgment seeking reversal or remand of Defendant's decision. [Doc. No. 14]. Defendant then filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. [Doc. No. 15]. Plaintiff subsequently filed a Response in support of his Motion for Summary Judgment, and Defendant filed a reply. [Doc. Nos. 15, 18].

## II. Relevant Factual Background

### a. Psychologist Ted Shore, Ph.D.

On June 15, 2015, Dr. Ted Shore conducted a complete psychological consultative examination of the Plaintiff and rendered opinions about his functional capabilities. See

---

[1] Plaintiff previously filed for disability insurance benefits on December 11, 2006. Plaintiff was found to be disabled and began receiving benefits on December 27, 2008 up until May 26, 2010, when he was incarcerated. See AR at 20. Since Plaintiff's benefits were terminated for a non-medical reason, there is no presumption of continued disability for the present application. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008).

[2] AR refers to the administrative record lodged with this Court.

AR at 454–460. Dr. Shore observed that Plaintiff was cooperative at the time of the examination and put forth adequate effort. Id. Dr. Shore also made the following observations: Plaintiff's speech was mildly slurred, but Dr. Shore was able to understand all of his verbal productions. Id. Plaintiff's intelligence appeared to be about average based on testing and observation, and his abstract, cognitive, and reality contact were all intact. Id. Plaintiff was able to recall many details from his personal history, could recall three items immediately, and recalled one out of three items after three minutes. Id. Plaintiff had minimal difficulty focusing on tasks, although his attention and concentration was generally intact. Id. Dr. Shore found Plaintiff's fund of knowledge was average and his judgment satisfactory. Id.

Dr. Shore administered the "Trail Making Test" part A and B, which is designed to measure an individual's attention, concentration, fine motor speed and ability to filter out interfering stimuli. Id. Plaintiff performance of Part A indicated no impairment and suggested he could perform simple tasks accurately. Plaintiff's performance in Part B indicated mild impairment suggesting he could perform detailed tasks accurately but somewhat slowly. Id. Next, Dr. Shore administered the "Wechsler Adult Intelligence Scale" which is a standardized intelligence test for adults. Id. Based on his performance on the test, Dr. Shore opined that Plaintiff's overall intellectual ability likely falls within the low-average range. Id. Plaintiff fell within the border line range based on his "Wechsler Memory Scale" test, which is designed to measure an individual's memory. Finally, Plaintiff displayed mildly impaired visual recall while conducting the "Bender" test, which is designed to screen for organic impairment. Id.

Based on the evaluation, Dr. Shore opined that Plaintiff had various "mild" limitations including "ability to maintain adequate work pace, attention, and concentration." Id. Additionally, Dr. Shore noted Plaintiff had two "moderate" limitations. First, Plaintiff has moderate difficulty in his "[a]bility to interact appropriately with co-workers, supervisors, and the public," which "may be marked at times of stress" because Plaintiff is "prone to explosive outburst and anger." Id. Second, Plaintiff is moderately

3

limited in his ability "to maintain regular attendance" due to his "difficulty managing stress." Id. The ALJ found Dr. Shore's opinion consistent with his assessment of Plaintiff and with the overall weight of the evidence. Therefore, the ALJ assigned the opinion great weight. See AR at 28.

### b. Psychologist Richard Kaspar Ph.D.

Dr. Richard Kaspar is State agency psychologist who reviewed Plaintiff's records, which included Dr. Shore's report and assessment. See AR at 138–152. In his mental RFC assessment, Dr. Kaspar opined that Plaintiff was moderately limited in his ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." Id. at 149. Additionally, Dr. Kaspar found Plaintiff to be moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. Dr. Kaspar explained that notwithstanding those limitations, Plaintiff retains the "capacity to perform simple and likely at least intermediate level tasks" but "may have some difficulties with work attendance and work effort." Id.

Dr. Kaspar acknowledged Plaintiff had moderate limitations in interacting with the general public as well as accepting instructions and responding appropriately to criticism from supervisors. Id. at 149–150. In evaluating Plaintiff's adaptation limitations, Dr. Kaspar opined moderate limitations in several categories including the ability to respond appropriately to changes in work setting. Id. at 150. In his ultimate mental RFC assessment, Dr. Kaspar determined Plaintiff retained the "capacity to perform simple and likely intermediate level tasks with little contact with the public, and stresses and work changes matriculated in transition." Id. The ALJ found Dr. Kaspar's assessment well supported by the evidence in the record, and assigned it great weight. See AR 34.

### c. Psychologist Brady Dalton, Psy.D.

On November 16, 2012, upon request of reconsideration, State Agency psychologist Brady Dalton reviewed Plaintiff's file. See AR 153–170. In his mental RFC assessment,

Dr. Dalton opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, but data suggests Plaintiff is able to remember basic workplace locations and procedures, as well as remember and understand simple instructions. See AR at 166. Dr. Dalton found Plaintiff had several moderate limitations with his ability to sustain concentration and persistence. Id. Dr. Dalton explained that Plaintiff is able to carry out simple instructions, follow simple work like procedures, and make simple work related decisions. Id. at 167. Additionally, Dr. Dalton found Plaintiff to have adequate ability to sustain attention and pace throughout extended periods of time, especially if he is engaged in a simple repetitive task. Id. Finally, Dr. Dalton believed Plaintiff has an adequate ability to maintain a regular work schedule. Id.

In rating Plaintiff's social interaction skills, Dr. Dalton noted difficulties with social function due to his antisocial and criminal history, but Plaintiff retains the basic social skills required for competitive employment, although he would be best suited to work with minimal social demands and little public contact. Id. In his final mental RFC determination, Dr. Dalton reaffirms Dr. Kaspar's simple work finding, noting no evidence of change or deterioration in Plaintiff's condition. Id. at 168. The ALJ found Dr. Dalton's assessment well supported by the evidence in the record, and assigned it great weight. See AR 34.

### d. Vocational Expert Hearing Testimony

On April 25, 2014, the ALJ held a hearing where a vocational expert testified regarding Plaintiff's past and future work capabilities. See AR at 121. The ALJ gave the vocational expert a hypothetical in order to determine whether Plaintiff retained the ability to perform his last employment as a ship fitter. The hypothetical given, in relevant part, was as follows:

> Assuming a hypothetical of the same age, education, [and] work experience as the [Plaintiff] with the following limitations. . . .Can understand, remember, and carry out simple job instructions. Will be unable to perform work that would require directing others, abstract thought or planning; maintain attention and concentration to perform simple, routine, and repetitive tasks; and a work environment free of fast paced production requirements; can have occasional interactions with co-workers and supervisors but no direct

5

interaction with the general public; work in an environment with occasional changes to the work setting; occasional work related decision making . . . .

See AR at 122. The vocational expert was of the mind that an individual with the above limitations would be unable to perform Plaintiff's past work. Id. at 123. The vocational expert was able to identify several jobs in the national economy in which a person with the hypothetical limitations could perform adequately. Id. However, the vocational expert confirmed these jobs would be eliminated if the person would be absent four or more days per month or lacked the ability to maintain concentration for two hour segments. Id.

### e. The ALJ's July 11, 2014 Decision

In the present case, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 9, 2012. See AR at 22. The ALJ further found that Plaintiff had the following severe impairments: history of traumatic brain injury, status post pacemaker implant, decreased hearing in the right ear, hypertension, mood disorder, a history of opiate abuse, history of alcohol abuse, history of cannabis abuse, history of methamphetamine abuse, post-traumatic stress disorder, and a cognitive disorder. Id. The ALJ determined Plaintiff did not have an impairment or combination of impairments that meet or are medically equal in severity to one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. Id. The ALJ determined that Plaintiff had the residual functional capacity to perform medium work. See AR at 24. The ALJ found that considering the Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff could perform. See AR at 35. Those findings led to the ALJ's ultimate conclusion that Plaintiff was not disabled as defined by the Social Security Act. See AR at 36.

## LEGAL STANDARD

### I. Qualifying for Disability Benefits

To qualify for disability benefits under the Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

16-cv-0963-JAH-BGS

months; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C. § 423(d)(1)(A), 2(A). An applicant must meet both requirements to be found "disabled." Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Gainful work activity" is defined as work that is "usually done for pay or profit" regardless of whether or not a profit is realized. 20 C.F.R. § 404.1572(b). If the applicant is engaged in "substantial gainful activity" then he will be found not disabled "regardless of his medical condition or age, education, and work experience." 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the decision maker proceeds to the next step in the process.

At step two, the "medical severity" of the claimant's impairments are considered. 20 C.F.R. § 404.1520(a)(4)(ii). It must be determined whether the claimant has a medically determinable impairment, or a combination of impairments, that can be classified as "severe". Id. An impairment, or combination of impairments, is considered severe if it "significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If no severe impairment or combination of impairments is found, the disability claim is denied. However, if the impairment is determined to be severe, the evaluation proceeds to the third step. Id.

In the third step of the process, it must be determined whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404 Appendix 1 to Subpart P. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If a condition "falls short of the [listing] criterion" a multiple factor analysis is appropriate. Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003). In conducting such analysis, "the Secretary

shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." Id. at 1182 (quoting 42 U.S.C. § 423(d)(2)(B)). If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, where it is determined whether the impairment prevents the claimant from performing work he has performed in the past. See 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his previous work, the analysis proceeds to the fifth and final step of the process.

During the final step of the process, it must be determined whether the claimant is able to perform other work in the national economy considering his age, education, and work experience. See 20 C.F.R. § 404.1520(a)(4)(v). The claimant is entitled to disability benefits only if he is not able to perform other work. See 20 C.F.R. §§ 404.1520(g)(1). The Social Security Administration is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given his residual functional capacity and vocational factors. See 20 C.F.R. § 404.1560(c)(2).

## II. Judicial Review of an ALJ's Decision

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. See 42 U.S.C. § 405(g). The scope of judicial review is limited. The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." Brawner v. Secretary of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (citing Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. Sandgathe v. Charter, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The reviewing court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. See Desrosiers v. Secretary

of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (citing Allen v. Secretary of Health and Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984)). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

However, even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. See 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. Id. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).

## DISCUSSION

### I. Incorporating Medical Opinion evidence into Plaintiff's RFC

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir.1989) (citing 20 C.F.R. § 404.1545). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). See also 20 C.F.R. §§ 404.1513(c), 416. 913(c). If a physician's RFC assessment is not contradicted by another physician, the ALJ must provide clear and convincing reasons for rejecting that opinion. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (as amended) ("[T]he Commissioner must provide 'clear and convincing'

reasons for rejecting the uncontradicted opinion of an examining physician.") (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990)). There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (citing Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.2008)).

Plaintiff asserts the ALJ erred by failing to incorporate the two moderate limitations opined by Dr. Shore into Plaintiff's RFC. See Doc. No. 14, pg. 6. Plaintiff further argues that the ALJ failed to provide specific and legitimate reasons for rejecting the limitation, which is especially required here because the ALJ gave Dr. Shore's opinion "great weight." Id. The two "moderate limitations" at issue will be analyzed in turn.

### a. Plaintiff's moderate limitation in his ability interacting with co-workers, supervisors, and the public

First, Plaintiff argues the ALJ's RFC ignored the opined limitations in his ability to interact with co-workers, supervisors, and the public which may rise to marked limitation at times of stress. Id. Defendant contends the ALJ properly used Dr. Kaspar and Dr. Dalton's translations of Dr. Shore's opinions in order to articulate concrete restrictions for Plaintiff's RFC. See Doc. No. 15–1, pg. 6.

This Court finds no obvious inconsistency between Dr. Shore's moderate limitation regarding Plaintiff's ability to deal with people and the ALJ's RFC. The ALJ ultimately found Plaintiff could "have occasional interaction with co-workers and supervisors, and no direct interaction with the general public." See AR at 24. The ALJ clearly considered Plaintiff's inability to interact with the general public, and found the deficiency so significant that he should have no direct contact with the public whatsoever. This limitation acknowledges and incorporates Dr. Shore's limitation, if not overemphasizes it. Additionally, the Social Security Administration defines a "moderate" limitation as one that ". . . is more than a slight limitation in [a certain area], but the individual can still function satisfactorily." Cantu v. Colvin, 2015 WL 1062101, at *14 (N.D. Cal. Mar. 10,

2015). Accordingly, the ALJ's RFC which found him capable of communicating or interacting with coworkers or supervisors, although not for sustained or continuous interactions, was a proper interpretation.

These findings are consistent with the opinions of both State Agency psychologists who reviewed Plaintiff's file. Dr. Kaspar opined that Plaintiff was moderately limited in his "ability to interact appropriately to the general public" and "respond appropriately to critics from supervisors." See AR at 149–150. Dr. Kaspar ultimately concluded Plaintiff had the capacity to perform simple work with "little contact with the public." Id. Dr. Dalton found Plaintiff moderately limited in his ability to "interact appropriately with the general public," and "accept instructions and respond appropriately to criticism from supervisors." See AR at 167. Notwithstanding those limitations, Dr. Dalton opined that Plaintiff "retains the social skills required for competitive employment" but would be "best suited to work with minimal social demands and little public contact." Id. Not only was the ALJ's RFC consistent with all three medical opinions, it was arguably more restrictive than necessary. In Shaibi v. Berryhill, 870 F.3d 874, 879 (9th Cir. 2017), the court affirmed a similar RFC which found the claimant capable of "occasional interaction" with coworkers notwithstanding a medical opinion demonstrating the claimant was "moderately limited" in that regard. The ALJ's RFC concerning Plaintiff's limited ability to interact with the general public and potential coworkers is harmonious with Dr. Shore's opinion and supported by substantial evidence in the record.

### b. Plaintiff's moderate limitation in his ability to maintain regular attendance and manage stress in a typical work setting

Plaintiff contends that the ALJ's RFC failed to acknowledge his moderately limited ability to maintain regular attendance due to difficulty managing stress. See Doc. No. 14, pg. 6. Plaintiff argues that the ALJ erred by failing to either incorporate the limitation into his RFC or provide specific and legitimate reasons for rejecting the limitation. Id. Defendant retorts that the ALJ is not required to incorporate all of Dr. Shore's statements

11

16-cv-0963-JAH-BGS

verbatim, but rather adequately translate the clinical findings into a clear succinct RFC, which he accomplished. See Doc. No. 15–1, pg. 7.

Defendant argues that this case is virtually indistinguishable from Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008).[3] This particular case is substantially analogous to Stubbs-Danielson, and although it deviates in some respects, the Court finds it is controlling. In Stubbs-Danielson, "the Ninth Circuit found that an ALJ's limitation to 'simple, routine, repetitive' work sufficiently accommodated medical-opinion evidence that the claimant had a 'moderate' limitation in pace and 'other mental limitations regarding attention, concentration, and adaption.'" Curtin v. Colvin, 2016 WL 2642211, at *6 (C.D. Cal. May 9, 2016) (citing Stubbs-Danielson, 539 F.3d 1169, 1173–74. Courts have made it clear, however, that Stubbs-Danielson does not control where ". . . the medical evidence fails to establish that the claimant can perform simple work notwithstanding moderate/mild limitations in mental functioning." Shea v. Astrue, 2012 WL 12878360, at *3 (C.D. Cal. Aug. 10, 2012) (citing Brink v. Commissioner, 343 Fed.Appx. 211, 212 (9th Cir. Aug. 18, 2009); Feltis v. Astrue, 2012 WL 2684994, at *4 (E.D. Cal. July 6, 2012); Lim v. Astrue, 2011 WL 3813100, at *7 (E.D. Cal. Aug. 29, 2011); Bentancourt v. Astrue, 2010 WL 4916604, at *3 (C.D. Cal. Nov. 27, 2010). For example, in Shea v. Astrue, 2012 WL 12878360, at *3, the court rejected the Commissioner's reliance on Stubbs-Danielson finding that ". . . unlike Stubbs, no doctor opined Plaintiff retains the ability to 'carry out

---

[3] In Stubbs-Danielson, the examining psychiatrist, Dr. McCollum, diagnosed the claimant with borderline intellectual functioning and opined she maintained a "slow pace in thought and action." Stubbs-Danielson, 539 F.3d 1169, 1171 (9th Cir. 2008). Several months later, a State Agency reviewing psychologist, Dr. Eather, acknowledged Dr. McCollum's observation about the claimant's slow pace, likewise indicated claimant had several mental limitations, and ultimately concluded claimant could "perform simple work without public contact." The ALJ's RFC adopted Dr. Eather's simple work with no public interaction restriction. Id. The Stubbs-Danielson court found the ALJ properly translated Dr. McCollum's pace and mental limitation into the "the only concrete restrictions available to him–Dr. Eather's restriction to 'simple tasks.'" Id. at 1174. Additionally, the court rejected claimant's argument that the adoption of Dr. Eather's restriction constituted an outright rejection of Dr. McCollum's opinion, specifically because "Dr. McCollum did not assess whether [the claimant] could perform unskilled work on a sustained basis [and] Dr. Eather's report did." Id. at 1173.

simple tasks' notwithstanding the doctor's imposition of mild/moderate limitations in various mental areas." Id. Ultimately, the ALJ must have some other medical bases to conclude that a restriction, such as a restriction to "simple work," adequately accounts for all of the claimant's mental limitations. Here, there is substantial evidence in the record to support the ALJ's determination that Plaintiff could perform "simple, routine, repetitive work" despite his moderate attendance limitation.

First, Dr. Shore opined Plaintiff's ability to maintain regular attendance and manage stress in a workplace setting was moderately limited, which was due to his difficulty managing stress. See AR at 459. Contrary to Plaintiff's contentions, this is not a concrete restriction, but rather a functional limitation used to assist the ALJ in formulating the RFC. The mild, moderate, or severe limitations are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96–8p, available at 1996 WL 374184, *4. Additionally, as discussed briefly above, Dr. Shore's report did not provide a definition for a "moderate" limitation specifically relating to Plaintiff. As such, the Court infers that he used the term consistent with how the Social Security Administration has previously defined it. "Form HA-1152-U3 defines a 'moderate' limitation as '[t]here is more than a slight limitation in this area, *but the individual can still function satisfactorily*." Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-U3, Medical Source Statement of Ability to Do Work-Related Activities (Mental) (emphasis added); Cantu v. Colvin, 2015 U.S. Dist. LEXIS 29367, *45-46, 2015 WL 1062101 (N.D. Cal. Mar. 10, 2015) (citing Form HA-1152-U3 as providing the definition of a "moderate" limitation)." Turner v. Colvin, No. CV 15-0020 KES, 2015 WL 5708476, at *3 (C.D. Cal. Sept. 29, 2015). Therefore, a fair reading of Dr. Shore's opinion is that, although Plaintiff has more than a slight limitation in workplace attendance, he can still function satisfactorily in that area.

Second, both reviewing agency psychologists acknowledged Plaintiff's moderate attendance limitation, yet still opined that Plaintiff retained the capacity to perform simple work. Dr. Kaspar found Plaintiff moderately limited in his ability to both "perform

activities within a schedule, maintain regular attendance, and be punctual within customary tolerance" as well as "complete a normal workday and workweek without interruptions from psychologically based symptoms. . . ." See AR at 149. In his explanation of what the above limitations indicated, Dr. Kaspar wrote, "[Plaintiff] [r]etains the capacity to perform simple and likely at least intermediate level tasks . . . [although he] may have some difficulties with work attendance and work effort." Id. Plaintiff's file was subsequently reviewed once more on reconsideration by Dr. Dalton, who concurred with Dr. Kaspar's moderate limitation findings and explained, in relevant part, ". . . [Plaintiff] is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions . . . [Plaintiff] appears to have an adequate ability to maintain a regular schedule." See AR at 166–167. The opinions of the these two non-examining psychologists may serve as substantial evidence so long as their opinions are consistent with independent clinical findings or other evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ found both Dr. Kaspar and Dr. Dalton's opinions were well supported by the overall evidence, and this Courts finds nothing in the record to disturb that finding. These opinions serve as substantial evidence supporting the ALJ's determination that simple work adequately represents Plaintiff's attendance limitations.

The ALJ's RFC is supported by other factors as well. Dr. Shore opined that Plaintiff's limited ability "to maintain regular attendance" was due to his "difficulty managing stress." See AR at 460. The ALJ imposed limitations on Plaintiff's workplace stress which were more restrictive than those suggested in the medical opinions, including "no contact" with the general public when both reviewing psychiatrists recommended "little contact" with the general public. This more restrictive RFC mitigated possible stressors which could aggravate or exacerbate Plaintiff's mental conditions and ultimately cause a higher rate of absenteeism. Additionally, The Ninth Circuit has held that evidence of other activities, such as "child care, personal care, household chores, and regularly attending church," are factors that suggest that the claimant is "capable of regularly attending to necessary matters, such that any impairment he has with respect to attendance

would not limit his ability to work and, therefore, need not be included in the RFC assessment." Turner v. Berryhill, 693 F. App'x 722 n.1 (9th Cir. 2017). In his decision, the ALJ acknowledged that Plaintiff retains the ability to perform chores, including doing laundry, shopping, and yard work. See AR 108–109. Plaintiff retained the ability to arrive punctually for his medical appointments,[4] he completed over forty-five group therapy meetings, and he attended weekly case management meetings and monthly meetings with other residents while living in transitional housing. See AR at 31. These activities are substantial evidence that Plaintiff remains able to engage in a wide range of work-related activities, including maintaining regular attendance.

## **CONCLUSION AND ORDER**

Based on the above analysis, the ALJ did not commit legal error when he failed to explicitly include Plaintiff's moderate limitations verbatim, as opined by Dr. Shore, into his ultimate RFC determination. The ALJ was not required to set forth specific and legitimate reasons for their explicit omission because any specific exclusion did not constitute a rejection of Dr. Shore's opinion, as Dr. Shore's limitations were properly incorporated into the mental RFC. Ultimately, the determination of a claimant's residual functional capacity is a legal decision reserved to the Commissioner acting through the ALJ. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner"), 404.1546(c), 416.946(c) (identifying the ALJ as responsible for determining residual functional capacity). Where that RFC properly incorporates all of Plaintiff's limitations and is supported by substantial evidence in the record, as it is here, the Court must affirm the decision of the Commissioner.

---

[4] Plaintiff arrived on time to his appointment with Dr. Shore. See AR at 454. Plaintiff saw Veterans Affairs psychologist, Dr. Beizai, a total of seven times from September 2012 to March 2015, and arrived on time for each appointment. See AR at 504, 794, 751, 645, 620, 854, 893.

For the reasons set forth above, **IT IS HEREBY ORDERED** Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross-Motion for Summary Judgment is **GRANTED**. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: February 26, 2018

_____
JOHN A. HOUSTON
United States District Judge